**LEE LITIGATION GROUP, PLLC**
CK Lee (CL 4086)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

WIKTORIA FEDAK, *on behalf of herself,*
*FLSA Collective Plaintiffs*
*and the Class,*

Plaintiff,

v.

MERCER STREET HOSPITALITY, LLC,
SESSANTA, LLC
d/b/a BISTROT LEO,
d/b/a BUTTERFLY SOHO,
d/b/a A60 ROOFTOP, and
JOHN MCDONALD,

Defendants.

---

Case No.:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Jury Trial Demanded

Plaintiff, WIKTORIA FEDAK ("Plaintiff"), on behalf of herself and others similarly situated, by and through her undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, MERCER STREET HOSPITALITY, LLC, SESSANTA, LLC d/b/a BISTROT LEO, d/b/a BUTTERFLY SOHO, d/b/a A60 ROOFTOP, ("Corporate Defendants"), and JOHN MCDONALD ("Individual Defendant") (each individually, "Defendant" or, collectively, "Defendants"), and states as follows:

## INTRODUCTION

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that she and similarly situated individuals are entitled to recover from Defendants: (1) unpaid wages including overtime, due to time-shaving; (2) unpaid wages due to improperly deducted meal credits; (3) unpaid overtime premiums; (4) illegal retention of gratuities; (5) unpaid wages, including overtime, due to an invalid tip credit; (6) liquidated damages; and (7) attorneys' fees and costs.

2. Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), she and others similarly situated are entitled to recover from Defendants: (1) unpaid wages including overtime due to time-shaving; (2) unpaid minimum wages due to invalid tip credit; (3) unpaid overtime premiums; (4) unpaid wages due to improperly deducted meal credits; (5) illegal retention of gratuities; (6) statutory penalties; (7) liquidated damages; and (8) attorneys' fees and costs.

3. Plaintiff further alleges, on an individual basis, that, pursuant the NYLL § 191(c), she is entitled to recover from Defendants: (1) unpaid commissions; (2) damages for late payment; (3) damages for breach of contract; and (4) attorneys' fees and costs.

4. Plaintiff additionally alleges, on an individual basis, that Defendants unlawfully retaliated against her, in violation of the FLSA and NYLL shortly after Plaintiff made a lawful complaint regarding the Defendants' tip pool allocations and seeks to recover from Defendants: (1) economic damages, (2) punitive damages, and (3) attorneys' fees and costs.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims

pursuant to 28 U.S.C. § 1367.

6. Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

7. Although Plaintiff has signed an arbitration agreement with Defendants, venue is still proper, since Defendants have failed to adhere to the agreement to arbitrate. When Plaintiff first served Defendants with notice of her claims, Defendants produced her signed arbitration agreement, at which point the parties proceeded to arbitration with Judicial Arbitration and Mediation Services ("JAMS"). Plaintiff filed her Arbitration Demand with JAMS on February 14, 2023, and faithfully litigated her grievances throughout the arbitration process (the "Arbitration"). However, Defendants refused to pay the arbitration costs, effectively stalling proceedings. On September 11, 2025, JAMS administratively closed the arbitration case, due to Defendants' failure to pay, leaving Plaintiff with no recourse but to file the instant suit. Defendants have abdicated their right by contract to arbitration and venue is thus proper in the Southern District.

8. Over the two years of Arbitration, the parties completed discovery and engaged in extensive motion practice. Plaintiff incurred significant legal fees and costs during that process and would have been entitled to recover such fees and costs had she prevailed at the evidentiary hearing. In light of Defendants' refusal to pay the required hearing costs, which resulted in the closure of the Arbitration, Plaintiff seeks to recover the fees and costs incurred in the Arbitration, as necessitated by Defendants' conduct, pursuant to 29 U.S.C. § 216(b).

## PARTIES

9. Plaintiff, WIKTORIA FEDAK, is a resident of Queens County, New York.

10. Defendant MERCER STREET HOSPITALITY, LLC owns and operates SESSANTA LLC d/b/a BISTROT LEO, d/b/a BUTTERFLY SOHO, d/b/a A60 ROOFTOP. Together, Defendants ran three (3) restaurants and bars (the "Restaurants") at the Hotel "Sixty Soho" located

at 60 Thompson St., New York, NY 10012. *See* **Exhibit A**, Mercer Street Hospitality Website About Us Section.

a. The Restaurants are also advertised and are listed together as an integral part of Mercer Street Hospitality. Attached as **Exhibit B** are screenshots of Defendants' Bistrot Leo and Butterfly Soho websites "about us" sections.

b. Individual Defendant JOHN MCDONALD is the founder and owner of Defendant Mercer Street Hospitality. *See* **Exhibit A.** JOHN MCDONALD's name also appears on the Restaurants' Websites; *see also* **Exhibit B.**

c. Defendant MERCER STREET HOSPITALITY, LLC manages and administers the work force and payroll of each Restaurant.

d. All the Restaurants share the same platform for making reservations through Defendants' MERCER STREET HOSPITALITY website. *See* **Exhibit A.**

e. The Restaurants share a common Mercer Street Hospitality Gift Card. *See*, **Exhibit C**.

f. The Restaurants' employees are fully interchangeable. During Plaintiff's employment by Defendants, Defendants frequently transferred employees among the Restaurants to perform work on an as-needed basis. As the Restaurants share the same location, Defendants share employees between Leo Bistrot and Butterfly Soho and manage the workforce jointly. Corporate Defendant SESSANTA, LLC, operated as one of Plaintiff's employers and Defendant MERCER STREET HOSPITALITY, LLC is the entity that manages and administers Plaintiff's payroll.

11. Corporate Defendant, MERCER STREET HOSPITALITY, LLC, is a domestic limited liability company organized under the laws of the State of New York, with a principal

place of business at 142 Mercer St., New York, NY 10012 and an address for service of process at c/o Jenkins & Lopresti LLP, 30 Broad St., 37th Floor, New York, NY 10004.

12. Corporate Defendant, SESSANTA, LLC, is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business at 60 Thompson St., New York, NY 10012 and an address for service of process at c/o Jenkins & Lopresti LLP, 30 Broad St., 37th Floor, New York, NY 10004.

13. Individual Defendant JOHN MCDONALD is the founder and owner of Corporate Defendant MERCER HOSPITALITY, LLC, which owns SESSANTA, LLC. JOHN MCDONALD exercises operational control as it relates to all employees including Plaintiff. JOHN MCDONALD exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff. JOHN MCDONALD exercises functional control over the business and financial operations of all Corporate Defendants. At all times, employees could complain to JOHN MCDONALD directly regarding any of the terms of their employment, and JOHN MCDONALD would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees.

14. At all relevant times, Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA.

15. At all relevant times, the work performed by Plaintiff was directly essential to the business operated by Defendants.

16. Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## FLSA COLLECTIVE ACTION ALLEGATIONS

17. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt front-of-house and back-of-house employees (including bartenders, servers, server assistants, hosts, hostesses, bar backs, runners, among others) employed by Defendants on or after the date that is six (6) years before the filing date of Plaintiff's Arbitration Demand (attached as **Exhibit C**) (herein, "FLSA Collective Plaintiffs").

18. At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages, including: (i) unpaid wages, including overtime, due to time shaving, and (ii) unpaid wages, including overtime due to improper deduction of meal credits, (iii) unpaid overtime premium. Further, with respect to tipped employees, Defendants were not entitled to take any tip credits under the FLSA, or to compensate Plaintiff and tipped FLSA Collective Plaintiffs at a sub-minimum wage hourly rate, because they improperly retained gratuities, and failed to satisfy all statutory requirements for taking a tip credit.

19. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

20. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA

Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

21. Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt front-of-house and back-of-house employees (including bartenders, servers, server assistants, hosts, hostesses, bar backs, and runners, among others) employed by Defendants at all locations, on or after the date that is six years before the filing date of Plaintiff's Arbitration Demand (the "Class Period").

22. All said persons, including Plaintiff, are referred to herein as the "Class." The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

23. The proposed Class is numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, as the facts on which the calculation of that number rests are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees ("Tipped Subclass") who also number more than forty (40). Plaintiff is a member of the Class and the Tipped Subclass.

24. Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of

Defendants, including: (i) failing to pay all earned wages, including overtime wages, due to a policy of time shaving, (ii) failing to pay proper overtime premiums; (iii) improperly deducting meal credits, (iv) illegally retaining gratuities, (v) failing to pay spread of hours premiums, (vi) failing to provide wage statements in compliance with the NYLL, and (v) failing to provide wage and hour notices upon hiring and as required thereafter, pursuant to the NYLL. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

25. Furthermore, Plaintiff and the Tipped Subclass also suffered as a result of Defendants' failure to pay them the proper minimum wage, Defendants' unlawful withholding of gratuities, and Defendants' unlawful misappropriation of the tips that they earned. Plaintiff and the Tipped Subclass Members were subjected to Defendants' policy and practice of deducting a tip credit despite Defendants' failure to observe requirements of the NYLL. In violation of the NYLL, Defendants (i) failed to properly provide tip credit notice, (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek, (iii) claimed tip credit for more than thirty (30) minutes of uninterrupted and continuous non-tipped work, (iv) implemented an invalid tip pool scheme whereby managers and non-tipped employees participated, (v) failed to accurately track daily tips earned or maintain records thereof, (vi) failed to properly provide tip credit notice at hiring and annually thereafter, and (vii) failed to provide a proper wage statement with every payment of wages informing Plaintiff and Tipped Subclass Members of the amount of tip credit deducted for each payment period.

26. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented Plaintiff in wage and hour cases.

27. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

28. Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

29. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a. Whether Defendants employed Plaintiff and the Class within the meaning of the NYLL;

b. What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiff and the Class Members;

c. At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and the Class Members for their work;

d. Whether Defendants properly notified Plaintiff and Class Members of their hourly rates and overtime rates;

e. Whether Defendants operated their business with a policy of not compensating employees for all hours worked due to time-shaving;

f. Whether Defendants properly compensated Plaintiff and Class Members the proper overtime premiums under the NYLL;

g. Whether Defendants paid Plaintiff and Class Members the proper compensation for all the hours worked under the NYLL;

h. Whether Defendants properly compensated Plaintiff and Tipped Subclass Members the proper minimum wage under the NYLL;

i. Whether Defendants properly provided proper written notice to all tipped employees, in their native language, regarding Defendants' tip credit;

j. Whether Defendants caused tip employees to engage in non-tipped duties exceeding 20% or 2 hours of their work shift;

k. Whether Defendants caused tip employees to engage in non-tipped duties exceeding thirty (30) minutes continuously;

l. Whether Defendants illegally retained gratuities earned by tipped employees;

m. Whether Defendants accurately tracked the amounts of tips earned each day and maintained records thereof;

n. Whether Defendants illegally retained gratuities to pay other employees;

o. Whether Defendants properly satisfied New York State's nutritional requirements containing all four (4) food groups for meals provided to employees;

p. Whether employees actually consumed the credited meals provided by Defendants; and

q. Whether Defendants provided proper wage statements to Plaintiff and Class Members per requirements of NYLL; and

r. Whether Defendants provided proper wage and hour notices to Plaintiff and Class Members per requirements of NYLL.

## **STATEMENT OF FACTS**

30. In or around May 2021, Plaintiff WIKTORIA FEDAK was hired by Defendants to work as a Hostess for Defendants at their BISTRO LEO located at 60 Thompson St., 12th Floor,

New York, NY 10012. Two weeks later, Plaintiff was transferred by Defendants to work at their A60 ROOFTOP, located at the same location on the rooftop. In or around September 2021, Plaintiff was transferred to work as a Hostess at Defendants' BUTTERFLY SOHO bar, located at the same location on the 2nd Floor. Plaintiff worked for Defendants until in or around January 2022.

31. Plaintiff was scheduled to work as follows:

a. From in or around May 2021 to in or around October 2021, she was scheduled to work five (5) days per week from 5:00 p.m. to 1:00 a.m., for a total of forty (40) hours per week;

b. From in or around October 2021 to in or around January 2021, she was scheduled to work four (4) days per week, from 6:00 p.m. to 2:00 a.m., for a total of thirty-two (32) hours per week.

32. Throughout her employment, Plaintiff was compensated at various pay rates:

a. From the beginning of her employment to October 3, 2021, Plaintiff was compensated $18.00 per hour;

b. From October 4, 2021, to January 30, 2022, Plaintiff was compensated $23.00 per hour.

c. Additionally, during Plaintiff's employment, Defendants compensated her at a rate of $15.00 per hour.

33. FLSA Collective Plaintiffs and the Class similarly worked similar schedules, at similar rates of compensation.

34. In addition, Defendants agreed in written to compensate Plaintiff a 4% commission for total amount each walk-in customer spent on a table, provided that the spending met or

exceeded the minimum requirement. However, Defendants failed to compensate Plaintiff her agreed upon commission.

*Timeshaving Claims*

35. Plaintiff and Class Members were not paid all of their wages or their overtime premiums at the rate of time and one half of the regular hourly rate, for all hours worked, due to Defendants' policy of automatically deducting a half-hour for meals. Due to the level of traffic in the restaurant, Plaintiff was required to work through the meal break. However, even on days when she worked through the break, Defendants still deducted thirty minutes from her compensable time. When Plaintiff noticed this, she would complain to her managers. However, they never stopped automatically deducting her time and she was not paid for up to two and a half hours per week of work.

36. Additionally, notwithstanding Defendants' improper automatic meal break deductions, Plaintiff was still not properly compensated for all hours worked due to Defendants' timeshaving practice. Defendants often deducted arbitrary hours from Plaintiff's compensable time each week. For example, during the week from 9/6/21- 9/12/21, Plaintiff clocked in for 31.97 hours, but was only compensated for 23.97 hours. Plaintiff was not paid for 8 hours during that work week. *See* **Exhibit D**, Plaintiff's time sheet and corresponding wage statements.[1]

37. Lastly, Defendants failed to compensate Plaintiff for work she was required to perform outside her schedule, including cultivating clients and managing relationships. During her employment with Defendants, Plaintiff's managers and one of Defendants' part-owners, Nur Khan, directed Plaintiff to give out her personal phone number to high-value and repeat clients. Those clients would text Plaintiff directly asking for reservations and other accommodations for

[1] Plaintiff was also known as "Izabella Fedak" during her employment with Defendants.

their visits. Plaintiff was required to spend at least ten (10) hours each week outside of her workplace managing these relationships and selling those clients on reservations, events, and table services. Despite that all of her work texting clients was at the direction of Defendants, Plaintiff was never paid for the time she spent off-site performing this work for Defendants' benefit.

38. Plaintiff and Class Members were similarly automatically deducted approximately thirty minutes a day but were not compensated for the work they performed when they worked through lunch break and were deducted arbitrary hours every week.

*Unpaid Spread of Hours Claims*

39. During her employment, Plaintiff would work shifts in excess of ten (10) hours. New York State law requires that any non-exempt employee whose workday spans more than ten hours must be paid the equivalent of one hour at the minimum wage.

40. However, as Defendants' records do not account for all hours worked by Plaintiff, Plaintiff was not compensated with her spread of hours premium, pursuant the NYLL.

41. FLSA Collective Plaintiffs and Class Members were also not paid the proper spread-of-hours premiums for workdays that spanned more than ten hours.

42. Defendants' conduct was willful because, as with their overtime violations, they knowingly required Plaintiff, FLSA Collective Plaintiffs, and Class Members to work for more than ten hours per day without any practice or plan to compensate those employees for their spread-of-hours premiums.

*Tip Retention and Invalid Tip Credit Claims*

43. Throughout her employment, Plaintiff was improperly excluded from the tip pool, thus deprived of the tips to which she was entitled. Defendants had a policy of claiming tip credits from employees' wages. According to Defendants' Employee Handbook, "food service workers (e.g.,

bartenders, servers, server assistants, hosts, bar backs, runners) will receive distributions." As a hostess, Plaintiff was required to service customers, including clearing tables, providing menus and utensils, providing the final check, among other duties, and she should have been eligible for the tips. Nonetheless, Defendants never distributed any tips to Plaintiff in accordance with their own guidance from the front-of-house tip pool.

44. Furthermore, despite the fact that Defendants never distributed tips to Plaintiff, Defendants improperly claimed tip credit for all hours worked by Plaintiff. Plaintiff's wage records show that Defendants claimed a tip credit of $5 per hour from Plaintiff's wages. As Plaintiff never received tips, this $5 tip credit deduction was improper, and at all times, Plaintiff was entitled to an additional $5 pay per hour as Plaintiff directly served customers. Plaintiff was paid at various rates ranging from $18.00, later increasing to $23.00, but because her paystubs state a $5.00 tip credit was taken, her actual pay rate should have been $23.00 and $28.00, respectively. Defendants did not keep daily records of the proper tip pool and never tracked the tips to which Plaintiff was entitled. At no time was Plaintiff provided with a valid tip credit notice. There was never an understanding that Defendants were entitled to claim a tip credit for the hours worked by Plaintiff. Defendants were not entitled to claim any tip credits under the FLSA and NYLL for any employee due to the deficient tip credit notice.

45. Furthermore, Defendants required Plaintiff to spend stretches of more than two hours each day engaged in non-tip-producing duties. Plaintiff spent time cleaning the restaurant, rolling up silverware, and taking inventory. Despite this fact, Defendants deducted a tip credit from Plaintiff's wages for all hours worked. Tipped FLSA Collective Plaintiffs and Tipped Subclass Members similarly had tip credits deducted from their paycheck when they spent two hours or more each shift on non-tipped duties as well as when they were not compensated any tips

whatsoever.

*Unpaid Overtime Claims*

46. Plaintiff was not paid the proper overtime premiums of one-and-one-half times her regular rate for hours worked over forty in a given week. When Plaintiff worked at different pay rates in a given week, usually for events, she received separate paychecks for each rate and event. When multiple paychecks from the same week added up to more than forty hours, Plaintiff was still only paid at her regular rate for all hours that she worked, and never received any blended overtime rate. For example, for the week of May 24, 2021, to May 30, 2021, Plaintiff worked for 44.20 hours and received three paystubs. However, she was not paid at the proper overtime rate for all hours worked over forty. *See* **Exhibit E**.

47. FLSA Collective Plaintiffs and Class Members were similarly paid at an improper straight rate when they worked more than forty hours at varying pay rates.

*Meal Credit Claims*

48. Throughout Plaintiff's employment, Defendants improperly deducted a meal credit from Plaintiff's wages under FLSA § 203(m) and 12 NYCRR § 146-1.9, without regard to whether the meal credit deducted exceeds the meals' "reasonable cost"[2], whether the meals provided satisfied New York State's nutritional requirements containing all four (4) food groups[3], and whether employees actually consumed the credited meals or not. FLSA Collective Plaintiffs and Class Members similarly had meal credits improperly deducted from their wages. Plaintiff, FLSA Collective Plaintiffs, and Class Members were mostly served inedible leftover meals that did not fulfil the nutritional requirements under the FLSA and NYLL. Defendants claimed three dollars

[2] 29 C.F.R. § 531.3
[3] 12 NYCRR § 146-3.7

and sixty cents ($3.60) towards meal credit from Plaintiff for every meal. *See* **Exhibit F**. However, Defendants did not provide adequate quantity and quality of meals to suffice all employees. Moreover, Plaintiff, FLSA Collective Plaintiffs, and Class Members were not provided with a lunch break, and Defendants were deducting meal credits knowing that Plaintiff, FLSA Collective Plaintiffs, and Class Members could not avail themselves of the benefits of the meal credit so deducted.

49. Defendants only served one family meal to staff that was proximate to Plaintiff's shift times and even that was served before Plaintiff arrived each day. When Plaintiff arrived, the food was always gone and even when it was present, it never fulfilled the nutritional requirements of § 146-1.9. Because of these issues, Plaintiff almost never consumed the meals that Defendants purported to provide in exchange for the deducted meal credit. Despite this, Defendants still deducted a meal credit from each of Plaintiff's shifts.

50. Defendants knowingly and willingly operated their business with a policy of not paying for all hours, and the overtime rate thereof for all hours worked to Plaintiff, FLSA Collective Plaintiffs, and Class Members, in violation of the FLSA and the NYLL.

*WTPA Claims*

51. Plaintiff and Class Members never received wage notices accurately stating their base rate of hourly pay from Defendants. They also did not receive wage statements from Defendants accurately stating their base rate of hourly pay, overtime rate, or hours worked. Specifically, the wage statements that Plaintiff and Class Members received did not reflect their actual hours worked, proper pay rate, all wages due, due to timeshaving, invalid tip credit, and unpaid commissions.

52. In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—

Defendants knowingly and willfully operated their business with a policy of not providing accurate wage notices, stating employees' true base rate of hourly pay, to Plaintiff and Class Members at the beginning of their employment with Defendants.

53. In *Guthrie*, the Second Circuit criticized some lower courts for denying the existence of standing for Wage Theft Prevention Act ("WTPA") violations. The Court stated as follows: "district courts have imposed too high a burden on plaintiffs-employees in § 195 cases." *Guthrie*, *113 F.4th* at 309. In making this critique, the Second Circuit clarified that there was no categorical Article III bar on WTPA claims. Instead of adopting the more extreme District Court approaches which were denying standing as to WTPA claims, the Second Circuit charted a middle course, "agree[ing] with those district courts that have held that a plaintiff must show some causal connection between the lack of accurate notices and the downstream harm." *Id.* at 308.

54. The Second Circuit specifically acknowledged the possibility that a "lack of [WTPA] notices and statements might impair an employee's ability to seek relief for violations they may not have information about" and merely concluded that plaintiff Guthrie had failed to adequately allege this in his complaint. *Id*. at 310 (internal quotes and citations omitted). This is unsurprising, given that the complaint there did not allege anything whatsoever beyond the defendant's technical violation of the law. *See id*. *Guthrie* itself quotes the relevant allegations as to WTPA violations, which Plaintiffs provide below:

- "[N]either Defendant provided Plaintiff with the notice(s) required by NYLL 195(1)."
- "[N]either Defendant provided Plaintiff with the statement(s) required by NYLL 195(3)."
- "Defendants…willfully failed to provide Plaintiff with the notice(s) required by NYLL 195(1)…"
- "Defendants…willfully failed to provide Plaintiff with the statement(s) required by NYLL 195(3)…"

55. The *Guthrie* Court stated that allegations asserting "[t]he lack of such notices and statements might impair 'an employee's ability to seek relief for violations they may not have information about'" and, therefore, may properly state an injury sufficient to support standing. Here, Plaintiff argues that Defendants' failure to provide paystubs listing all hours and rates of pay allowed Defendants to hide their wrongdoing. The hiding of their wrongdoing is made obvious through the documents produced in this case. As discussed above, Class Members had a half-hour for lunch automatically deducted from their pay each, regardless of whether or not they were able to take that break. Defendants' failure to accurately inform employees of their actual work hours, permitted Defendants to hide their underpayments.

56. The WTPA clams brought by Plaintiff contain common facts and common issues of law as to all Class Members. Class Members' records reveal the same (i) downward hours adjustments toward employees' schedules, (ii) automatic meal deductions, regardless of the length of employees' clock-outs, and (iii) automatic deductions regardless of whether Defendants' recorded employees as working through meals. As these common issues exist for the class, the question of whether these improper behind the scenes changes to employees' calculated hours would have hidden Defendants' wrongdoing from Class Members is (at a minimum) a merits question for a jury.

*Plaintiff's Individual Unpaid Commissions Claim*

57. During Plaintiff's employment, Defendants agreed to compensate all hostesses, including Plaintiff, a 4% commission for minimums sold at the door. Plaintiff worked to upsell patrons on table/bottle service which involved the patron agreeing to a minimum spend for the night and in return would receive 4% of the total sale as a commission. However, Defendants failed to compensate Plaintiff her agreed upon commission. Whenever Plaintiff raised a complaint

regarding Defendants' breach of contract, Defendants extended Plaintiff a check that did not represent the total commission accrued. As a result of Defendants' breach of contract, Defendants owe Plaintiff substantial wages for unpaid sales commission.

*Plaintiff's Individual Claims for Retaliation Under FLSA and NYLL:*

58. Defendants retaliated against Plaintiff because Plaintiff objected to Defendants' failure to compensate her owed commissions payments. Due to an immediate and personal loss of wages to Plaintiff, she complained regarding the policy to management and informed them about the missing commissions from her paychecks. Plaintiff's requests and complaints were shrugged off and she was forced to continue working with the ongoing conditions.

59. Plaintiff continued to object to Defendants' failure to pay her as the amount of her owed commissions mounted. As Defendants began to get fed up with Plaintiff's complaints, they began to respond more negatively. Finally, in late December of 2021, Plaintiff had a significant argument with Defendants' manager. Following that argument, Defendants started cutting Plaintiff's hours until, by late January of 2022, she was only working one day per week. Unable to support herself on such a schedule, Plaintiff had no choice but to quit.

60. Defendants constructively terminated Plaintiff by reducing her hours until she could no longer support herself. Plaintiff's termination was a direct and proximate result of her protesting Defendants' practices of failing to pay her commissions that she was owed.

61. Defendants violated anti-retaliation laws of both the FLSA and NYLL for terminating Plaintiff for making a lawful complaint.

62. Defendants knowingly and willfully operated their business with a policy of failing to pay Plaintiff, FLSA Collective Plaintiffs, and Class Members all wages, including overtime wages, due to a policy of timeshaving, in violation of the NYLL and the FLSA.

63. Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff and Class Members spread of hours premium for hours worked over ten (10), in violation of the NYLL.

64. Defendants knowingly and willfully operated their business with a policy of failing to pay Plaintiff, FLSA Collective Plaintiffs, and Class Members the proper overtime premiums of one- and one-half times their regular rate for all hours worked over forty in a given week in violation of the NYLL and the FLSA.

65. Defendants knowingly and willfully operated their business with a policy of failing to pay Plaintiff, FLSA Collective Plaintiffs, and Class Members all wages, due to a practice of improperly deducting a meal credit from their wages when Defendants did not meet the requirements to take such a deduction in violation of the NYLL and the FLSA.

66. Defendants knowingly and willfully operated their business with a policy of failing to pay Plaintiff, Tipped FLSA Collective Plaintiffs, and Tipped Subclass Members all wages, including overtime wages, due to a practice of improperly deducting a tip credit from their wages when Defendants did not meet the requirements to take such a deduction in violation of the NYLL and the FLSA.

67. Defendants knowingly and willfully operated their business with a policy of illegally retaining gratuities that were owed to Plaintiff, Tipped FLSA Collective Plaintiffs, and Tipped Subclass Members.

68. Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements to Plaintiff and Class Members in violation of the NYLL.

69. Defendants knowingly and willfully operated their business with a policy of not providing proper wage and hour notices to Plaintiff and Class Members, in violation of the NYLL.

70. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

71. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

72. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

73. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

74. At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.

75. At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs for all hours worked, including overtime hours.

76. At all relevant times, Defendants had a policy and practice that failed to pay proper overtime premiums of one-and-a-half times the regular rate to Plaintiff and FLSA Collective Plaintiffs.

77. At all relevant times, Defendants had a policy and practice that failed to pay proper wages to Plaintiff and Tipped FLSA Collective Plaintiffs, due to an invalid tip credit.

78. At all relevant times, Defendants had a policy and practice that illegally retained gratuities from Plaintiff and tipped FLSA Collective Plaintiffs.

79. At all relevant times, Defendants failed to compensate Plaintiff and tipped FLSA Collective Plaintiffs for the non-tipped work exceeding continuous thirty (30) minutes.

80. At all relevant times, Defendants had a policy and practice of improperly deducting meal credits from Plaintiff and FLSA Collective Plaintiffs regardless of whether the meal credit deducted exceed the meals "reasonable cost", whether the meals provided satisfied New York State's nutritional requirements containing all four (4) food groups, and whether Plaintiff and FLSA Collective Plaintiffs consumed the meals in question.

81. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

82. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, including their proper overtime premium, when Defendants knew or should have known such was due.

83. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

84. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

85. Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, unpaid wages and overtime due to time-shaving, unpaid overtime premiums, unpaid wages and overtime due to an invalid tip credit, illegally retained gratuities, and unpaid wages due to improperly deducted meal credits, plus an equal amount as liquidated damages.

86. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

**COUNT II**

**VIOLATION OF THE NEW YORK LABOR LAW**

87. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

88. At all relevant times, Plaintiff and Class Members were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

89. At all relevant times, Defendants engaged in a policy and practice of failing to pay Plaintiff and Class Members for all hours worked, including overtime hours, due to timeshaving.

90. At all relevant times, Defendants engaged in a policy and practice of failing to compensate Plaintiff and Class Members the statutory spread of hours premium for shifts that exceeded ten (10) hours in duration.

91. At all relevant times, Defendants engaged in a policy and practice of failing to pay Plaintiff and Class Members their proper overtime rates of one-and-a-half times their regular rate.

92. At all relevant times, Defendants engaged in a policy and practice of refusing to pay Plaintiff and Tipped Subclass Members the proper minimum wage and overtime due to an invalid tip credit in direct violation of the NYLL.

93. Defendants willfully violated the rights of Plaintiff and Tipped Subclass Members by illegally retaining gratuities, in direct violation of the NYLL.

94. Defendants failed to properly notify Plaintiff and the Tipped Subclass of their tips and tip pooling policies, in direct violation of the NYLL.

95. Defendants willfully violated Plaintiff's and Class Members' rights by improperly deducting meal credits from Plaintiff and Class Members regardless of whether the meals provided satisfied New York State's nutritional requirements containing all four (4) food groups, and whether Plaintiff and Class Members consumed the meals in question.

96. Defendants failed to properly notify employees of their overtime rate, in direct violation of the New York Labor Law.

97. Defendants knowingly and willfully operated their business with a policy of not providing all non-exempt employees proper wage notice, at date of hiring and annually thereafter, as required under the New York Labor Law.

98. Defendants knowingly and willfully operated their business with a policy of not providing wage statements, as required under the New York Labor Law.

99. Due to Defendants' New York Labor Law violations, Plaintiff and Class Members are entitled to recover from Defendants, unpaid wages due to timeshaving, unpaid overtime premiums, unpaid spread of hours premiums, unpaid wages due to an invalid tip credit, unpaid wages due to improperly deducted meal credits, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to New York Labor Law.

**COUNT III**

**VIOLATION OF THE NEW YORK LABOR LAW**
**(Individually, on behalf of Plaintiff)**

100. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully

set forth herein.

101. At all relevant times, Plaintiff and Class Members were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

102. Defendants knowingly and willfully breached their agreement in which Plaintiff was awarded a 4% in commission for minimum sales.

103. During her employment, Defendants never complied with the agreement. As a result, Defendants failed to compensate Plaintiff her accrued commissions for the sales she performed during her employment, in violation of the NYLL §191(c).

104. Defendants knowingly and willfully breached their employment terms by failing to compensate Plaintiff her commission on a monthly basis, pursuant the NYLL §191(c).

105. Defendants knowingly and willfully violated Plaintiff's rights by refusing to compensate Plaintiff her earned commission, pursuant to the NYLL §191(c).

106. Due to the Defendants' NYLL §191(c) violations, Plaintiff is entitled to recover from Defendants her unpaid commissions, damages for breach of contract, damages for late payment, reasonable attorneys' fees and costs, and disbursements of the action, pursuant to NYLL.

**COUNT IV**

**RETALIATION UNDER THE FAIR LABOR STANDARDS ACT**
**(Individually, on behalf of Plaintiff)**

107. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

108. At all relevant times, Plaintiff was an employee of Defendants within the meaning of the FLSA, and was a person covered by and intended to benefit from the provisions of the FLSA.

109. Section 15(a)(3) of the FLSA provides that it is a violation for any person to "discharge or in any other manner discriminate against any employee because such employee has filed any

complaint […] under or related to this Act."

110. As alleged herein, Plaintiff complained to Defendants and their managers regarding Defendants invalid unpayment of wages. In response to such complaints, Defendants constructively terminated Plaintiff by reducing her scheduled hours, in violation of Section 15(a)(3).

111. Defendants' retaliatory termination was in willful disregard of the provisions of the FLSA.

112. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff suffered damages in the form of back pay from lost earnings, compensatory damages, and punitive damages. Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of liquidated damages, interests, attorneys' fees and costs, as provided under the FLSA.

**COUNT V**

**RETALIATION UNDER THE NEW YORK LABOR LAW**
**(Individually, on behalf of Plaintiff)**

113. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

114. At all relevant times, Plaintiff was an employee of Defendants within the meaning of the NYLL, and was a person covered by and intended to benefit from the provisions of the NYLL.

115. Defendants willfully violated the NYLL by retaliating against Plaintiff by constructively terminating Plaintiff by reducing her scheduled hours after she raised her concerns about Defendants' unlawful policies regarding unpaid wages.

116. In response to such complaints, Defendants terminated Plaintiff in violation of Section 215 (a).

117. Defendants' actions constitute a violation of Section 215 of the NYLL. In relevant part, NYLL § 215(1)(a) states:

> No employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (1) because such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative, or to the attorney general or any other person, that the employer was engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter, or any order issued by the commissioner.

118. Defendants' conduct was in willful disregard of the provisions of the NYLL.

119. As a direct and proximate result of Defendants' willful disregard of the NYLL, Plaintiff suffered damages in the form of back pay from lost earnings, compensatory damages, and punitive damages. Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of liquidated damages, interests, attorneys' fees, and costs, as provided for under the NYLL.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of herself, FLSA Collective Plaintiffs and Class Members, respectfully request that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA, the NYLL;

b. An award, pursuant to the FLSA and NYLL, of reasonable fees and costs incurred by Plaintiff during the Arbitration;

c. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

d. An award, pursuant to the FLSA and the NYLL, of unpaid wages, including overtime, due to timeshaving;

e. An award, pursuant to the FLSA and the NYLL, of overtime premium;

f. An award, pursuant to the NYLL, of unpaid spread of hours premium;

g. An award, pursuant the FLSA and the NYLL, of unpaid wages, including overtime, due to an invalid tip credit;

h. An award of gratuities illegally retained by Defendants, due under the FLSA and NYLL;

i. An award of unpaid wages due to improperly deducted meal credits, due under the FLSA and the NYLL;

j. An award of unpaid wages due to unpaid commissions, due under the NYLL;

k. An award of statutory penalties, prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

l. An award of all applicable damages due to Defendants' retaliatory conduct under the FLSA and NYLL;

m. Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

n. Designation of this action as a class action pursuant to F.R.C.P. 23;

o. Designation of Plaintiff as Representative of the Class; and

p. Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: October 10, 2025

Respectfully submitted,

By: */s/ C.K. Lee*
C.K. Lee, Esq.

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, Second Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs and the Class*